NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 29 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BITCO GENERAL INSURANCE
CORPORATION,

          Plaintiff-ctr-defendant -
Appellee,

  v.

UNION RIDGE RANCH, LLC,

          Defendant - Appellant,

INLAND COMPANY,

          Defendant-ctr-claimant -
Appellant.

No. 24-6473

D.C. No.
3:22-cv-05624-BHS

MEMORANDUM[*]

BITCO GENERAL INSURANCE
CORPORATION,

          Plaintiff-ctr-defendant -
Appellee,

  v.

UNION RIDGE RANCH, LLC,

          Defendant,

No. 24-6474

D.C. No.
3:22-cv-05624-BHS

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

INLAND COMPANY,

              Defendant-ctr-claimant -
Appellant.

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted August 20, 2025
San Francisco, California

Before: CHRISTEN, BRESS, and VANDYKE, Circuit Judges.
Dissent by Judge CHRISTEN.

In this insurance coverage dispute, Union Ridge Ranch, LLC (URR) and Inland Company (Inland) appeal the district court's order granting summary judgment to BITCO General Insurance Corporation (BITCO) on BITCO's request for a declaratory judgment that it had no duty to indemnify Inland for its March 2021 settlement with URR. We review the district court's grant of summary judgment de novo. *L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Washington law applies to this insurance coverage action. Under Washington law, the "[i]nterpretation of an insurance contract is a question of law." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). In interpreting an insurance contract under Washington law, "[w]e give the language of the insurance policy the same construction that an 'average person purchasing insurance' would give the contract." *Holden v. Farmers Ins. Co. of Wash.*, 239 P.3d 344, 347 (Wash.

2

24-6473

2010) (quoting *Woo*, 164 P.3d at 459). The insured bears the burden of proving insurance coverage, and the insurer bears the burden of proving that an exclusion applies. *See, e.g.*, *Pleasant v. Regence BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014). Any ambiguities in the insurance contract "must be construed against the insurer and in favor of the insured." *Holden*, 239 P.3d at 347.

Assuming without deciding that appellants have demonstrated that URR's losses are covered "property damage" under the policy, BITCO demonstrated that the "impaired property" exclusion applies. That exclusion bars coverage for

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

In this case, Inland's motion for summary judgment conceded that "the property that was the subject of the loss—the complete parcel—falls within the definition of 'impaired property.'" "A party normally may not press an argument on appeal that it failed to raise in the district court." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009). But even if appellants have not forfeited the point, URR's claimed losses arose out of defects in Inland's work, including its grading work. And the "impaired property" exclusion applies to the claimed diminution of value of property adjacent to Wall 4, because it is part of the "impaired property" and it was damaged and allegedly lost value as a result of Inland's work.

The impaired property exclusion also contains an exception for "the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use." The parties debate whether, under Washington law, the insurer or the insured bears the burden of proving an exception to an exclusion from coverage. But we conclude that, even if BITCO bears the burden, the "sudden and accidental" exception in the impaired property exclusion does not apply here.

Under Washington law, the phrase "sudden and accidental" in insurance contracts generally means "unexpected and unintended." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 725 (Wash. 1994). Under this inquiry, we ask whether Inland, the insured, "subjectively expected or intended" that Wall 4 would fail. *Id.* at 726. We conclude that there is no genuine dispute of material fact that Inland knew and expected that Wall 4 would fail before it ultimately failed in January 2019.

In its counterclaims in the state court action that led to the Inland–URR settlement, URR affirmatively alleged that in early November 2018, a geotechnical engineering consultant tested Inland's work on the project and identified numerous defects, including that the retaining walls were not built correctly and had a substantial risk of failure. These defects led a third-party purchaser to terminate its agreement to purchase the project from URR. In November 2018, URR and Inland

met to discuss the issues raised by the geotechnical report, and, as a result of that meeting, Inland agreed to reduce the contract price. In addition, Tim North, a geotechnical consultant hired by URR to design the walls and oversee construction, testified that there were "obvious issues with Wall No. 4," even dating back to its construction, undermining the notion that its failure was unexpected. The testimony of another engineer, Seth Chandlee, further supports BITCO's position that the conditions that led to the wall failure were long apparent. Thus, in the months before the wall failed, Inland was on notice of the issues with the wall's construction and expected that Wall 4 would fail.[1] *Queen City Farms*, 882 P.2d at 725–26.

Appellants argue that the district court erred by relying on URR's counterclaims in the Washington state court action. But the district court was entitled to rely on URR's state court pleadings. *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is

---

[1] The dissent argues there is a gap in the record, because the retaining walls might not have been discussed in the November 2018 meeting. However, it is undisputed that the purpose of that meeting was to discuss the issues identified by the Terra Associates report, and it is also undisputed that the Terra report found a "substantial risk of future wall failures." Furthermore, North and Chandlee were the ones who originally designed the retaining walls and were overseeing Inland's construction work in real time, so their testimony about obvious issues with the wall during construction further supports Inland's notice prior to its failure.

competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." (quotations omitted)); *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 932 (9th Cir. 1975) (relying on "statements by [the defendant] itself in other proceedings"). And besides, URR and Inland do not dispute the relevant facts upon which the district court relied and cite the core undisputed facts in their opening brief. Likewise, the additional evidence on which appellants rely, such as the Blake Report, J2 Report, and the testimony of Joel Stalder, does not take away from the undisputed record evidence that URR and Inland were well aware of problems with Wall 4 before it ultimately failed, and thus that its failure was not unexpected.

Finally, because Inland was not entitled to coverage, the district court also correctly dismissed Inland's counterclaims. Inland conceded below that its counterclaims were moot and must be dismissed if the district court ruled that BITCO's interpretation of the policy was correct.

**AFFIRMED.**

*BITCO General Insurance Corporation v. Union Ridge Ranch, LLC, et al.,* Nos. 24-6473, 24-6474

CHRISTEN, Circuit Judge, dissenting:

The majority concludes that the record includes evidence establishing that the failure of Wall #4 was not unexpected from Inland's perspective. I agree this is the correct inquiry, but I am unable to find evidence in the record that supports the majority's conclusion. BITCO offered no evidence in support of its motion for summary judgment, and it conceded at oral argument that it was not sure that evidence as to this point exists in the record. As the majority recognizes, because there was no ruling on this issue in the parties' state-court litigation, the district court could not have invoked the doctrine of collateral estoppel to establish that the failure of the wall was not unexpected by Inland. The majority cites *Huey v. Honeywell, Inc.*, 82 F.3d 327 (9th Cir. 1996), and *International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913 (9th Cir. 1975), *overruled in part on other grounds by California v. American Stores Co.*, 495 U.S. 271 (1990), in support of its reliance on the allegation contained in the state-court counterclaims. Those cases establish that URR's assertions in the counterclaims may serve as evidence of facts, even though the counterclaims cannot be invoked as binding judicial admissions. But this still leaves a gap in the record. The counterclaims merely state that in November 2018, a third-party purchaser terminated its purchase agreement with URR "due to the defects and

1

problems with [Inland's] work on the Project identified in the report of Terra Associates, Inc.," and that URR and Inland met later that month so URR could "object to the defects and deficiencies in [Inland's] work on the Project." The counterclaims did not assert that Inland received the report or what problems URR and Inland discussed in the November 2018 meeting. Notably, it appears from the counterclaims that URR was dissatisfied with several aspects of Inland's work.

The majority also invokes the deposition testimony of two geotechnical consultants hired by URR. Both opined that the issues with Wall #4 were readily apparent before the wall's failure. But again, there is no evidence in the record to establish when Inland was made aware of these concerns. Even if the district court had access to these experts' reports and was able to confirm that the reports expressed concerns regarding the integrity of Wall #4—and Appellants argue that the court did not have these reports—the question remains whether Inland received them prior to the failure of Wall #4. If Inland had not received the reports, then the geotechnical consultants' opinions do not allow us to decide as a matter of law that the sudden and accidental physical injury exception to the impaired property exclusion does not apply, or to affirm the district court's ruling that BITCO's policy did not cover Appellants' loss.

This may seem like an overly technical result, given that the parties do not appear to contest that the November 2018 meeting took place, but even BITCO

conceded at oral argument that it could not confirm that the record shows Inland received notice of the likelihood of Wall #4's failure at the meeting. The record does not allow us to determine whether the failure of Wall #4 was unexpected from Inland's perspective. This is an evidentiary gap that resulted from BITCO's failure to proffer competent evidence in support of its partial motion for summary judgment. On this record, I would reverse the district court's judgment and remand for further proceedings.